Grover, J.
The testimony upon the question whether the plaintiff discharged Herrick, one of the makers, from liability upon the note, was conflicting. The correctness of the finding by the trial judge, that it did not, cannot be examined by this court.
The judge found that on the day the note fell due, one of the makers, Merriman, intended to pay it and drew the check of the firm of Merriman & Herrick (the makers), for the amount of the note on the Hational Marine Bank, and went to the bank where the note was made payable, met the president, Mr. Ames, at or near the door of the bank, showed him the check and said he was going to pay the note in suit, and the president requested him to get the check certified, and also, at the same time, requested him to pay the amount on another demand which the bank had against the makers of the note, instead of on the note in suit, and that thereafter, in a day or two, the said Merriman, according to the request of the president, destroyed the check and drew another for $500 on the same bank and paid that amount upon such other demand. That the indorsers *351 on the note in suit were considered good by the bank. The other demand was for an overdraft secured by the indorsement of W. H. Herrick, and was not regarded entirely good, for which reason the president desired to reduce the amount of the overdraft rather than to have the money applied to the note in question. That Merriman would have paid the note in suit with the check first drawn after getting it certified had he not been induced thus to change his mind by the president of the bank.
The plaintiff’s counsel insists that he is not concluded by this finding, for the reason that the case shows that it contains all the testimony given and that it appears from that, there was no testimony sustaining the material part of this finding. In the latter the counsel is correct, nevertheless I think we must assume that the finding is correct. This court in a case like the present can only examine questions of law arising upon exceptions, and the defendants exceptions raise the question as to the correctness of the legal conclusion, that the above facts did not constitute a defence for the- indorsers upon the note. There is no exception to the finding of the facts, nor could there well he any taken by the plaintiff as it did not desire to appeal from the judgment.
In examining the question I shall assume that the plaintiff was bound by the acts of its president. The defendants by their indorsement undertook that the makers should pay the note at maturity, and that in case of their default, they would pay it if payment was duly demanded and the requisite notice of non-payment given to them. There can be no pretence from the finding that the makers paid the note. They intended to pay it and drew a check upon another bank with which to make the payment, and took it to the bank for that purpose and informed the president of the plaintiff of their intention to pay the note in suit therewith, who requested them to pay the amount upon another demand of the plaintiff against them, with which they complied. The question is, whether this discharged the indorsers upon the note in suit. The *352 counsel for the appellants insists that it does, for the reason that it prevented payment, in fact, of the note, and cites Fleming v. Gilbert in support of the position. -That case holds, in substance, that an obligee of a bond may waiver the performance of a condition by parol, and that such waiver will bar an action brought by the obligee for non-performance. But here there was no waiver of payment of the note. The makers owed two debts to the bank, and had $500 that they intended to pay upon the note in suit. They had the right to pay it upon either demand. The president simply expressed a wish that they should pay it upon the demand note instead of the note in suit. This did not prevent their paying upon the latter, if, under all the circumstances, they chose to do it. The contract of the indorsers was that they should pay, and this they did not do. The request to pay upon the other demand did not preclude them from paying the. noté in suit, and, consequently, did not discharge the indorsers upon the note. The cashier testified that the note was presented at the proper time for payment, which was refused, of which due notice was given to the indorsers. The wish expressed by the president that the check should be applied upon the other demand was at a different time from the making of this demand of payment, and had no legal effect upon that.
Merriman, one of the makers, testified that upon the day the note in suit became due, he drew a check for the amount upon the National Marine Bank, and took it to the plaintiff’s bank for the purpose of taking it up; that, at that time, the makers were in debt to the plaintiff $3,000 upon a demand note, and that, on presenting the check to the cashier, he said he had had a conversation with the president and that “ the note was good; and that, if we would pay $500, on account of our indebtedness to the bank, they would carry the note to the close of navigation.” That, thereupon, he gave him a check of $500 to apply upon their indebtedness. » The cashier denies all this; and the judge, in his findings, gave credit to the testimony of the latter, but as *353 some exceptions were taken by the defendants to the admission of evidence bearing upon this question it will be well,, before examining the latter, to determine whether, assuming the truth of the testimony of Merriman, it showed a defence for the indorsers. If it does, it is upon the ground that it showed an agreement by the plaintiff to extend the time of payment of the note in suit until the close of navigation, without anything further to be done by the makers in relation thereto. If .there was a valid agreement by the plaintiff to extend the time of payment the indorsers were thereby discharged. Waiving the question whether there was a sufficient consideration for such an agreement, let us inquire whether the testimony showed that it was made. Merriman testifies that the cashier said the plaintiffs would carry the note in suit until the close of navigation. What bankers mean by carrying debts and notes by banks is perfectly understood by all dealers with such institutions. They never mean that they will retain overdue paper in the bank, no discount being paid thereon with the right of action thereon suspended for the term they agree to carry it, but they do mean that they will, from time, to time, according to the mode of discounting paper, discount a like note which they will accept in the place of the one then held, if presented when the latter becomes due, and the discount upon the one received is paid. This is all that is ever understood by carrying notes or debts by banks. It follows that the agreement shown by the testimony of Merriman was to the effect that if the makers made a new note indorsed by the same person as the one then held by the bank, and presented it to the bank and paid the discount thereon when the one held became due, they would receive it in renewal of the one held. This the makers did not do, and the note held became payable according to its terms, and all parties at once liable for its payment. This renders it unnecessary to determine whether any incompetent evidence was admitted tending to corroborate the testimony of the cashier.
The judgment appealed from must be affirmed, with costs,.
All concur. Judgment affirmed.